Banco de Puerto Rico, como Liquidador del Banco Comercial de Puerto Rico, recurrente, *v.* El Registrador de la Propiedad de San Juan, Sección Segunda, recurrido.

Núm. 981.—*Sometido:* Noviembre 2, 1936. *Resuelto:* Diciembre 15, 1936.

*José* y *Rafael Ramírez Santibáñez,* abogados del recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR TRAVIESO, emitió la opinión del tribunal.

El Banco de Puerto Rico, en su carácter de Liquidador del Banco Comercial de Puerto Rico, ejecutó, por el procedimiento sumarísimo, una hipoteca sobre finca propiedad de

los esposos Rafael Saldaña y Mercedes Padial, sobre la que pesaba además un embargo por la suma de $1,200, trabado por José del Río, y anotado en el Registro con posterioridad a la inscripción de la hipoteca ejecutada.

El auto de requerimiento fué notificado a los deudores, esposos Saldaña-Padial, y a José del Río, y transcurrido el término legal se ordenó la venta de la propiedad en subasta pública, siendo finalmente adjudicada la finca al banco por la suma de $4,000. El secretario de la Corte de Distrito de Bayamón expidió mandamiento dirigido al Registrador de la Propiedad de San Juan, Sección Segunda, para que cancelase en los libros del registro a su cargo el embargo a que se refiere la orden transcrita en el mandamiento, la que textualmente dice:

"Vista la anterior moción, la corte la declara con lugar y ordena la cancelación del gravamen posterior, consistente en un embargo por la suma de $1,200.00 trabado por José del Río, y que afecta la finca que fué adjudicada al Banco de Puerto Rico, en su carácter de Liquidador del Banco Comercial de Puerto Rico, en la subasta celebrada el día 25 de agosto de 1936, en el caso de epígrafe, por aparecer de los propios autos, no haber producido los bienes ejecutados remanente alguno, para pagar acreencias posteriores y aparecer asimismo de los autos, que el referido acreedor posterior fué notificado personalmente de este procedimiento, con fecha 16 de mayo de 1936 y habiéndose cumplido además con todos los requisitos de la Ley, ordenando además que por el Secretario de este tribunal se expida un mandamiento dirigido al Registrador de la Propiedad de San Juan, Sección Segunda, para que haga la cancelación correspondiente en los libros del Registro a su cargo del referido embargo, que grava la finca ejecutada y que se describe como sigue:"

Presentado dicho mandamiento en el registro, junto con la escritura de venta judicial otorgada por el márshal a favor del banco ejecutante, el registrador consignó al dorso del primero, la siguiente nota:

"Hecha la cancelación al folio 237 Vto. tomo 87 de Bayamón, finca 3738, inscripción 3a., con el defecto subsanable de no ser firme la

orden de la corte de acuerdo con el artículo 82 de la Ley Hipoteca-
ria.—San Juan, septiembre 22, 1936.''

De dicha nota recurre para ante esta Corte Suprema la
parte interesada en la cancelación, calificándola de errónea.

■■ En su alegato, el registrador invoca los artículos
82 y 125 de la Ley Hipotecaria, aceptando asímismo que es
de aplicación el 295 del Código de Enjuiciamiento Civil por-
que es supletorio de la Ley Hipotecaria, según el párrafo
final del 176 del reglamento.

El artículo 125, supra, se encuentra en el Título V de la
Ley Hipotecaria, que trata ''De las Hipotecas'' y dispone
lo siguiente:

''Cuando sea una la finca hipotecada, o cuando siendo varias no
se haya señalado la responsabilidad de cada una por ocurrir el caso
previsto en el artículo 123, no se podrá exigir la liberación de nin-
guna parte de los bienes hipotecados, cualquiera que sea la del
crédito que el deudor haya satisfecho.

''En los casos de que sobre una o varias fincas graviten créditos
hipotecarios de varios acreedores y lleguen a venderse o adjudicarse
para el pago al primer acreedor, en términos de que el valor de lo
vendido o adjudicado o no iguale o no supere al crédito hipote-
cario que se realice, los créditos restantes se entenderán de hecho
y de derecho cancelados, y se cancelarán en el Registro, previa pre-
sentación del oportuno mandamiento judicial en que consten la venta
o la adjudicación y sus causas, con expresión del acto que consti-
tuye la solvencia del crédito preferido, todas las inscripciones pos-
teriores de censos e hipotecas y las anotaciones de embargo hechas
también con posterioridad, dejando libres de todo gravamen por
estos conceptos la finca o fincas enajenadas o adjudicadas.

''Esto se entenderá sin perjuicio de los demás derechos y acciones
que los acreedores postergados puedan ejercitar contra su deudor
conforme a las leyes.''

Su correspondiente en la ley de la Península lo es el ar-
tículo 125, ampliado al incorporarse con el número 133 a la
ley de 1880 para Puerto Rico, con la adición de los dos úl-
timos párrafos de que consta hoy. La Comisión encargada

de redactar los proyectos para la aplicación a la Provincia de Puerto Rico de la legislación hipotecaria de la Península, explica la reforma así:

"El Título V, de las Hipotecas, es igual al de la ley expresada por tratarse en él de cuestiones de, doctrina, habiéndose tan sólo aclarado algún artículo y ampliado el 125 de la Península (133 de Puerto Rico), en el sentido de que cuando la finca hipotecada no vale más que para pagar al primer acreedor y sobre ella gravitan créditos hipotecarios posteriores de otros acreedores, se cancele expresamente la hipoteca respecto a éstos, para que no pese siempre sobre dicha finca un crédito ilusorio que ningún interés tienen en cancelar los segundos y demás acreedores, y que puede embarazar a la libre disposición del adquirente." Véase 1 Stuyck, Legislación Hipotecaria, pág. 33.

Al aprobarse en 1893 la Ley Hipotecaria vigente hoy en Puerto Rico, se dió a ese artículo el número 125, y se varió algo la redacción del segundo párrafo.

Sus disposiciones, como puede verse, son de carácter substantivo y no procesal. Simplemente, considera extinguido el derecho real inscrito, cuando vendida judicialmente la finca, o hecha su adjudicación, el valor de lo vendido, después de satisfecho el crédito del primer acreedor, no alcance a pagar los demás créditos posteriormente inscritos. Cuanto se refiere al efecto general de la cancelación, sus clases, casos en que puede pedirse u ordenarse, formalidades o condiciones y requisitos necesarios para cancelar, es materia del Título IV de la ley, que comienza con el artículo 77 y termina con el 104, ambos inclusive. Véase 3 Morell, Legislación Hipotecaria, página 369. A la página 400 del mismo tomo dice el mismo autor: "Los artículos 82 y 83 (que forman parte del título IV) puede decirse que comprenden toda la materia de cancelaciones en lo relativo a las *formalidades y requisitos necesarios para cancelar*." (Bastardillas nuestras.) A ellos debemos referirnos, cuando de poner en práctica o hacer viables las disposiciones del artículo 125 se trate.

Figura entre éstos el artículo 79, que dice:

"Podrá pedirse, y deberá ordenarse en su caso, la cancelación to-tal:

"1 . . . . . . .

"2. Cuando se extinga también por completo el derecho inscrito..

"3 . . . . . . .

"4 . . . . . . .

Según el artículo 132 del Reglamento para la Ejecución de la Ley Hipotecaria,

"Se considerará extinguido el derecho real inscrito para los efectos del número 2 del mismo artículo 79:

"Primero: . . . . . . .

"Segundo: . . . . . . .

"Tercero: Cuando vendida judicialmente la finca y pagado el primer acreedor hipotecario, no quedare residuo para aplicar a los demás créditos posteriormente inscritos, conforme a lo dispuesto en el artículo 125 de la ley."

De acuerdo, pues, con los artículos anteriormente trans-critos, los créditos hipotecarios a que se refiere el segundo párrafo del artículo 125 de la ley, posteriores al del primer acreedor hipotecario que ejecuta, se consideran extinguidos por declaración de ley, y su cancelación deberá ordenarse, si se pidiere. Podría caber alguna duda en cuanto a si también se consideran extinguidas por disposición de ley las anotaciones de embargo hechas con posterioridad, ya que el artículo 132 del reglamento habla de "derecho real ins-crito" y la anotación de embargo no es un derecho real. Véase 3 Morell, Legislación Hipotecaria, página 446. Sin embargo, nosotros opinamos que también se consideran ex-tinguidas, dada la redacción del artículo 125 de la ley y el tercer párrafo del artículo 132 del reglamento.

■■ Dispone el artículo 82 de la Ley Hipotecaria, en lo que es de aplicación a este recurso, lo siguiente:

"Las inscripciones o anotaciones preventivas, hechas en virtud de escritura pública, no se cancelarán sino por providencia ejecutoria contra la cual no se halle pendiente recurso de casación, o por

otra escritura o documento auténtico, en el cual exprese su consentimiento para la cancelación la persona a cuyo favor se hubiese hecho la inscripción o anotación, o sus causahabientes o representantes legítimos.

"No obstante lo dispuesto en el párrafo anterior, las inscripciones o anotaciones a que el mismo se refiere, podrán cancelarse sin los requisitos expresados, cuando quede extinguido el derecho inscrito por declaración de la ley, o resulte así de la misma escritura inscrita.

"Las inscripciones o anotaciones hechas en virtud de mandamientos judiciales no se cancelarán sino por providencia ejecutoria que tenga las circunstancias prevenidas en el párrafo primero de este artículo."

De acuerdo con el párrafo primero de este artículo (supra) "las inscripciones o anotaciones preventivas, hechas en virtud de *escritura pública*" podrán cancelarse de dos modos, a saber:

(1) "por providencia ejecutoria contra la cual no se halle pendiente recurso de casación."

(2) "por escritura o documento auténtico en el cual exprese su consentimiento para la cancelación la persona a cuyo favor se hubiese hecho la inscripción."

Entiende Barrachina, con muchísima razón, a nuestro juicio, que:

"El legislador ha antepuesto el medio cancelatorio de ejecutoria al de la escritura pública, cuando lo más natural es que hubiera dicho que tales cancelaciones se verificarán por escritura pública, en la que exprese su consentimiento la persona a cuyo favor se hubiere hecho la inscripción o anotación, sus causahabientes, en defecto, o sus representantes legales, *y a falta de este medio* (voluntario, pacífico, desenvuelto en la vida normal) por ejecutoria contra la que no se halle pendiente recurso de casación." 2 Barrachina, Derecho Hipotecario y Notarial, página 304. (Bastardillas nuestras.)

El párrafo segundo del mismo artículo dispone que, para cancelar las inscripciones o anotaciones preventivas hechas en virtud de *escritura pública,* o sea aquéllas a que se refiere el párrafo anterior, puede prescindirse del requisito de la providencia ejecutoria o de la escritura en su caso, "cuando

quede extinguido el derecho inscrito por declaración de la ley, o resulte así de la misma escritura inscrita.''

Y hemos visto que esto ocurre en el caso previsto en el artículo 125 de la ley, segundo párrafo. En esas circunstancias, es preciso traer a colación el artículo 137 del Reglamento, que dice en lo que es pertinente para resolver este caso:

''En consecuencia de lo dispuesto en el párrafo segundo del artículo 82 de la ley, la cancelación de las inscripciones cuya existencia no dependa de la voluntad de los interesados en las mismas, se verificará con sujeción a las siguientes reglas:

''Primera: . . . . . . .

''Segunda: Cuando por consecuencia de la prelación consignada en el número cuatro del artículo 107 de la ley, en favor del primer acreedor hipotecario, se enajene judicialmente la finca o derecho gravado, las inscripciones de crédito extendidas a favor de segundos o posteriores acreedores se cancelarán a instancias del que resulte dueño del inmueble o derecho gravado, con sólo presentar mandamiento en que la cancelación se ordene, en el cual deberá expresarse que el importe de la venta no bastó a cubrir el crédito del primero, o que el sobrante, si lo hubo, se consignó a disposición de los acreedores posteriores.''

Sigue al párrafo segundo otro que se refiere a la cancelación de inscripciones o anotaciones hechas en virtud de *mandamientos judiciales*. En cuanto a éstos, dispone que ''no se cancelarán sino por providencia ejecutoria que tenga las circunstancias prevenidas en el párrafo primero de este artículo,'' o en otras palabras, por providencia ejecutoria contra la cual no se halle pendiente recurso de casación.

Todo embargo de propiedad inmueble debe hacerse, según las secciones 1 y 9 de la Ley para asegurar la efectividad de sentencias, aprobada el día primero de marzo de 1902 (Comp. 5233 y 5241), mediante una orden del tribunal que conociere de la demanda, que llevada por vía de mandamiento al registro de la propiedad, produzca la anotación deseada. Es, pues, a virtud de un *mandamiento judicial* que

actúa el registrador al anotar, entre otros gravámenes, un embargo sobre propiedad inmueble.

De lo expuesto resulta que si bien el artículo 82 en sus párrafos primero y segundo, permite cierta liberalidad en cuanto a la cancelación de inscripciones o anotaciones preventivas hechas en virtud *de escritura pública,* el párrafo tercero, que se refiere a las hechas en virtud de *mandamientos judiciales,* es exigente en cuanto a sus términos mandatorios y medios para realizarla. También resulta de lo expuesto que, siendo las de embargo, anotaciones hechas a virtud de *mandamiento judicial,* el precepto aplicable para su cancelación es el párrafo tercero, supra.

En resumen, si el derecho real fué inscrito a virtud de *escritura,* y quedare extinguido por declaración de ley, su cancelación se rige por el párrafo segundo del artículo 82, supra, y por su concordante, el 137 del Reglamento, supra, que sólo requiere un *mandamiento.* Si el derecho fué inscrito mediante escritura pública y no ha quedado extinguido por declaración de ley, entonces la cancelación debe hacerse por escritura o documento auténtico en el cual exprese su consentimiento para la cancelación la persona a cuyo favor se hubiese hecho la inscripción, o en su defecto, por *providencia ejecutoria* contra la cual no se halle pendiente recurso de casación.

Pero si por el contrario, se tratara de un caso como el de autos, en que la anotación (el embargo) ha tenido que ser hecho a virtud de *mandamiento judicial,* de acuerdo con los preceptos terminantes del párrafo tercero del artículo 82, la cancelación *debe* hacerse mediante providencia ejecutoria contra la cual no se halle pendiente recurso de casación. Quede o no quede extinguida la anotación por declaración de ley, el artículo 82, párrafo tercero, es definitivo en cuanto a que la cancelación debe practicarse por providencia ejecutoria.

No obstante lo anterior, pudiera ocurrir que la providencia mandando a cancelar el gravamen posterior no sea ape-

lable de acuerdo con el artículo 295 del Código de Enjuiciamiento Civil, y por lo tanto ejecutoria desde el momento en que se dicta. Es obvio que en ese caso procedería la cancelación inmediatamente después de autorizado el correspondiente mandamiento; siendo ejecutoria la providencia, se cumple con el artículo 82, supra, pues como dice Morell:

"No es muy convincente el argumento. La verdad es que en el artículo 82 sobran las palabras 'contra la cual no se halle pendiente recurso de casación'; con decir que ha de tratarse de providencia firme o ejecutoria es bastante." 3 Morell, 473.

 El artículo 295 del Código de Enjuiciamiento Civil dice, en la parte que pudiera ser de aplicación a este caso, así:

"Artículo 295.—Podrá establecerse apelación para ante el Tribunal Supremo contra las resoluciones de las cortes de distrito en los casos siguientes:
"1 . . . . . . .
"2 . . . . . . .
"3. De una providencia . . . anulando o negándose a anular un embargo . . . dentro de los 10 días de dictada la providencia o sentencia interlocutoria y de anotada la misma en el libro de actas de la corte o de archivada en la secretaría."

La cuestión se reduce ahora a determinar si la orden de la Corte de Distrito de Bayamón decretando la cancelación del embargo por $1,200 objeto de este recurso, es o no apelable dentro del citado artículo.

En *Gelabert & Co., S. en C.,* v. *Morales et al.,* 28 D.P.R. 602, la corte decretó el embargo de bienes del demandado para asegurar la efectividad de la sentencia. El embargo se llevó a cabo en bienes de Burgos y éste gestionó, consiguiéndolo, por orden de abril 30, que se dejara sin efecto y ordenara el levantamiento. Un mes después pidió a la corte que librase al márshal mandamiento para que cumpliese la orden de abril 30, por ser ejecutoria. La corte lo resolvió así, y el demandante apeló. Esta Corte Suprema resolvió:

"La parte apelada no ha suscitado la cuestión de nuestra juris-dicción para resolver esta apelación, pero, esto no obstante, debemos considerarla motu proprio.

"Entendemos que la orden contra la cual se ha interpuesto este recurso no es apelable porque no se halla comprendida en ninguno de los casos del artículo 295 del Código de Enjuiciamiento Civil, pues no anula el embargo que se había decretado sino que se limita a disponer el cumplimiento de la orden anterior de 30 de abril de 1919 que fué la que anuló y dejó sin efecto la orden de embargo que se había dictado en este pleito. La resolución de 30 de abril de 1919 sí era apelable porque anulaba y dejaba sin efecto la orden de embargo, pero no puede ser revisada ahora al ser apelada la orden que solamente dispuso su cumplimiento. De aceptarse el camino seguido por el apelante en este caso cualquier sentencia firme dictada en un pleito podría ser revisada en apelación interpuesta posteriormente contra la orden que se limita a disponer su ejecución."

En *Pizá & González* v. *Ramis,* 24, D.P.R. 868, con motivo de procedimiento ejecutivo sumario seguido por Ramis contra Pizá & González, éstos demandaron a aquél para que se declarara extinguida la hipoteca y otorgara escritura de cancelación. Consiguieron de la corte una orden, mandando retener toda cantidad que en virtud del procedimiento sobre ejecución y subasta deba entregarse a Ramis. Entonces Ramis solicitó se le fijara fianza para obtener el alzamiento de la retención acordada, señalando la corte $700. Posteriormente y sin que prestara fianza, pidió que se le entregaran $700 retenidos a virtud de la orden de la corte. Esta moción fué declarada sin lugar por orden de 23 de junio de 1916. De esa orden apeló Ramis. Dijo este tribunal:

"Se ha levantado por la parte apelada la cuestión legal de si la orden de 23 de junio de 1916 es apelable o no. Entendemos que lo es por estar comprendida en el número 3ro. del artículo 295 del Código de Enjuiciamiento Civil que otorga recurso de apelación contra una providencia de la corte de distrito 'anulando o negándose a anular un embargo,' según el texto español, 'disolviendo o negándose a disolver un embargo,' según el texto inglés.

"La orden de que se trata deniega el alzamiento de la retención de una suma de dinero sujeta a las resultas de un juicio seguido por Pizá y González contra Francisco Ramis sobre extinción y cancelación de hipoteca, y tal denegatoria es una orden por la que se deniega la disolución de un embargo."

En *Hermida y Palos* v. *Gestera,* 20 D.P.R. 452, se trataba de una acción en cobro de dinero en que se embargó una finca del demandado en aseguramiento de sentencia, tomándose en el registro anotación del embargo. Entonces el demandado pidió que se levantara el embargo y ordenara la cancelación en el registro por haber consignado en corte la cantidad reclamada. La corte ordenó en 23 de enero de 1914 que quedara sin efecto dicho embargo debiendo cancelar el registrador la anotación que se había hecho de dicho embargo. Contra esta orden de 23 de enero de 1914 interpusieron los demandantes apelación. Se resolvió lo que sigue:

"Alega el apelado que este Tribunal carece de jurisdicción para resolver la apelación por no estar comprendida la orden apelada en ninguno de los preceptos del artículo 295 del Código de Enjuiciamiento Civil. El apelado conoce el precepto legal que autoriza la apelación contra cualquier orden anulando o negándose a anular un embargo, pero alega que la orden apelada no constituía sino una mera modificación del embargo, la que no anuló o dejó sin efecto el embargo hecho anteriormente. Sostiene que habiéndose hecho la consignación en este caso por virtud de la sección 15 de la ley de marzo 1, 1902, dicha orden era simplemente modificando la forma del embargo y disponiendo la suspensión del mismo. También se ha alegado que la ley de marzo 1, 1902, no incluye intereses y honorarios y por tanto que el caso no varía por el hecho de que solamente se hubiera consignado la suma de ochocientos dólares sin consignar a la vez otra suma suficiente a cubrir los intereses y las costas.

"Según los términos de la orden dictada en enero 23, 1914, el embargo quedó sin efecto. Si las palabras tienen alguna significación el embargo quedó anulado por virtud de dicha orden. Una fianza que responda al mismo fin no deja embargada la finca. Ésta queda necesariamente exenta del embargo. Además, la orden de embargo de acuerdo con sus términos comprendía sumas diferentes y distintas a la de ochocientos dólares consignados por el demandado. La

consignación hecha por el demandado se fundó en una razón distinta de la que tuvieron los demandantes al hacer el embargo. Examinado el caso desde cualquier punto de vista somos de opinión de que la orden de la corte anuló el embargo y era apelable.''

La orden dictada por la Corte de Distrito de Bayamón en el caso de autos, *ut supra,* ni anula ni se niega a anular el embargo de José del Río. Simplemente ordena su cancelación en los libros del Registro correspondiente. No está, pues, comprendida dentro del inciso 3 del artículo 295 del Código de Enjuiciamiento Civil, y no es, por lo tanto, apelable. Es de perfecta aplicación el caso de *Gelabert & Co., S. en C.,* v. *Morales et al.,* 28 D.P.R. 602.

Visto lo cual, debió el registrador cancelar el embargo posterior de José del Río, sin defecto de ninguna especie.

*Debe revocarse y se revoca la nota recurrida.*

El Juez Presidente Señor del Toro no intervino.